**AVEMCO INSURANCE COMPANY, a Maryland corporation, Plaintiff,**

v.

**Robin Gayle WHITE, individually and as personal representative of the Estate of Jeffery Alan White, deceased; Doniece Lackey, individually and as Executrix of the Estate of William Roy Lackey, deceased, and as personal representative of the heirs of William Roy Lackey; and Harold D. "Red" Stevenson, Defendants.**

**No. 77560.**

Supreme Court of Oklahoma.

Nov. 3, 1992.

Robert S. Lafferrandre, Gary M. Chubbuck, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for plaintiff.

Michael P. Atkinson, Galen L. Brittingham, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for defendants.

WATT, Justice.

The United States District Court for the Northern District of Oklahoma certified a question of state law to this court under the Oklahoma Uniform Certification of Questions of State Law Act, 20 O.S.1991 §§ 1601, et seq. The federal court asks:

Whether an Airworthiness Certificate exclusion in an aircraft liability policy is contrary to Oklahoma public policy, and unenforceable when no causal link has been shown between the crash of the aircraft and the failure to have a "Standard" Category Airworthiness Certificate?

We answer no. Such an exclusion is not contrary to Oklahoma public policy, and the insurer does not need to prove a causal link between the crash and the absence of a "Standard" Airworthiness Certificate.

## FACTS

The relevant facts are simple, and undisputed. Plaintiff, Avemco, issued an aircraft policy to decedent, White, in Missouri, which covered an airplane White owned. White was a citizen and resident of Missouri and kept his airplane there. In 1989, White died in the crash of a Beech T–34 Mentor aircraft, owned by defendant Stevenson. Stevenson lacked a "Standard" Category Airworthiness Certificate for it. At the time of the crash, the airplane had an experimental aircraft certificate. The crash occurred in Muskogee County, Oklahoma.

White's policy with Avemco provided excess coverage to White during his operation of certain aircraft he did not own. The policy expressly excluded from coverage, however, any such aircraft that lacked a " 'Standard' Category Airworthiness Certificate."

Decedent, Lackey, also died in the crash. Lackey's estate sued White's estate in the District Court of Muskogee County. Lackey's estate claimed that the negligence of either White or the aircraft owner, Stevenson, or both, caused the crash. White's estate demanded that Avemco defend the Muskogee County action and indemnify it under the aircraft policy. Avemco refused, and brought the federal court action from which this certified question comes. Avemco filed a motion for summary judgment in the federal court action on the ground that the express terms of White's policy excluded the loss from coverage.

The federal court then certified to this court the question we consider today.

## THE SCOPE OF OUR DECISION

Avemco makes two claims in its brief. It contends that Missouri law governs the interpretation of the White policy. Missouri law does not require an insurer to show a causal connection between excluded conduct and the loss. Avemco also argues that enforcing the exclusion does not violate Oklahoma public policy, although the insurer fails to prove a causal link between the crash and the absence of a "Standard" Airworthiness Certificate.

Title 20 O.S.1991 § 1602 of the Oklahoma Uniform Certification of Questions of Law Act authorizes this court "... to answer questions of law *certified to it* ..." [Emphasis added.] In this procedural setting, therefore, we decline to deal with whether Missouri law should be applied, as this issue is beyond the scope of the federal court's certified question. The certified question before us today asks only whether the exclusion in White's policy violates Oklahoma public policy. We limit our discussion to this issue.

## DISCUSSION

Most jurisdictions have rejected the notion that public policy requires a causal connection between the commission of an act that gives rise to an exclusion from insurance coverage and the happening of a casualty. A few, however, have adopted the contrary rule.

*Avemco Insurance Co. v. Chung,* 388 F.Supp. 142 (D.C.Haw.1975), is an example of the minority view. There, the court quoted Appleman, *The Law of Insurance,* 6A, § 4146 (1972), for the proposition that "the trend of modern authority" is to hold that violation of a condition must have contributed to the loss to be enforceable. To the contrary, our research reveals that this is *not* the modern view.[1] Few jurisdictions have adopted the minority rule. See the discussion by the Supreme Court of Texas in *Puckett v. U.S. Fire Ins. Co.,* 678 S.W.2d 936, 938 (1984), where the court said, "Whether this is the modern trend is debatable ..."[2]

Most courts that have applied the minority rule have found that the terms of the policy that imposed a condition were ambiguous. We have often held that ambiguities in insurance contracts must be strictly construed in favor of the insured. In the absence of actual doubt about the meaning of the contract, however, we will not rewrite the policy's terms simply because doing so would favor the insured. See *Dod-*

---

1. See the following cases that support the majority view: *Security Ins. Co. v. Anderson,* 158 Ariz. 426, 763 P.2d 246 (1988); *Threlkeld v. Ranger Ins. Co.,* 156 Cal.App.3d 1, 202 Cal.Rptr. 529 (Cal.App. 5 Dist.1984); *Western Food Products v. United States Fire Ins. Co.,* 10 Kan.App.2d 375, 699 P.2d 579 (Kan.App.1985); *Omaha Sky Divers Parachute, Inc. v. Ranger Ins. Co.,* 189 Neb. 610, 204 N.W.2d 162 (1973); *Security Mut. Cas. Co. v. O'Brien,* 99 N.M. 638, 662 P.2d 639 (1983); *Bellefonte Underwriters Ins. Co. v. Alfa Aviation, Inc.,* 61 N.C.App. 544, 300 S.E.2d 877 (N.C.App. 1983); *Ochs v. Avemco Ins. Co.,* 54 Or.App. 768 636 P.2d 421 (Or.App.1981); *Di Santo v. Enstrom Helicopter Corp.,* 489 F.Supp 1352 (E.D.Pa.1980); *Protective Assoc. of America v. Prinsen,* 291 U.S. 576, 54 S.Ct. 502, 78 L.Ed. 999 (1934); *Hedges Enterprises, Inc. v. Firemans Fund Ins. Co.,* 225 N.Y.S.2d 779, 34 Misc.2d 249 (Sup.Ct. Trial Term Monroe County 1962); *Aetna Cas. and Surety Co. v. Urner,* 264 Md. 660 287 A.2d 764 (1972); *Kilburn v. Union Marine and General Ins. Co.,* 326 Mich. 115, 40 N.W.2d 90 (1949); *Grigsby v. Houston Fire and Cas. Co.,* 113 Ga.App. 572, 148 S.E.2d 925 (Ga.App.1966);

*Bequette v. National Ins. Underwriters, Inc.,* 429 F.2d 896 (9th Cir.1970) (construing Alaska law); *Roberts v. Underwriters at Loyds London,* 195 F.Supp 168 (S.D.Idaho 1961); *Arnold v. Globe Indemnity Co.,* 416 F.2d 119 (6th Cir.1969) (construing Kentucky law); *Powell Valley Electric Coop. v. United States Aviation,* 179 F.Supp. 616 (W.D.Va.1959).

2. Although the *Puckett* court conceded that a substantial majority of jurisdictions will enforce conditions without requiring proof of a causal connection between the violation of the condition and the loss, the court nevertheless adopted the minority view. Its holding was based in large part on a Texas statute, Tex.Ins.Code Ann. art. 6.14. Under the Texas statute no violation of a condition in a fire insurance policy voids the policy "unless such ... violation contributed to bring about the destruction of the property." The court interpreted the statute to mean that Texas's public policy required the application of the "contribute to the loss" rule to all insurance policies. The Oklahoma Legislature has passed no such statute.

son v. St. Paul Ins. Co., 812 P.2d 372, 376 (Okla.1991), where we said:

> The terms of the parties' contract, if unambiguous, clear and consistent, are accepted in their plain and ordinary sense, and the contract will be enforced to carry out the intention of the parties *as it existed at the time the contract was negotiated.* [Emphasis added.]

We find no ambiguity in the exclusion here. The policy excludes a non-owned aircraft from coverage unless it has a "Standard" Category Airworthiness Certificate. The clear language of the policy excluded coverage of the airplane in which White and Lackey died because the airplane lacked a "Standard" Category Airworthiness Certificate. It was, therefore, not covered unless we adopt the minority view that the exclusion is unavailable to the insurer because it has not shown that the violation of the exclusion contributed to the crash. This we refuse to do. By focusing on the cause of the loss, the minority rule ignores whether it is reasonable to assume that, *at the inception of the policy,* the insured understood and agreed that the commission of the act triggering the exclusion would increase the insurer's risk of loss. An exclusion that excludes from coverage, activity that increases the *risk* of loss is reasonable. We see no justification for depriving an insurer of the exclusion's benefit unless the insurer first satisfies requirements in addition to those called for by the policy.

The condition in White's policy that excluded from coverage a non-owned aircraft without a "Standard" Airworthiness Certificate was reasonable. The risk of an accident while flying an airplane without a "Standard" Airworthiness Certificate is clearly greater than the risk of an accident while flying an aircraft with one. White agreed to this reasonable exclusion. Its terms were clear and unambiguous. White's estate is bound by it. *Dodson,* Id. We see no reason to rewrite the agreement.

**CERTIFIED QUESTION ANSWERED.**

HODGES, V.C.J., LAVENDER, SIMMS, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., concurs in result.

ALMA WILSON, J., dissents.